NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARPE DIEM SPA, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, <br><br> Defendant. | Civ. No. 20-14860 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

# **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Travelers Casualty Insurance Company of America ("Defendant"). (ECF No. 16.) Plaintiff Carpe Diem Spa, Inc. ("Plaintiff") opposes. (ECF No. 18.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 16) is granted.

# **BACKGROUND**

**I.     Factual Background**

   A.     *Policy*

Plaintiff is a hair and beauty salon in Far Hills, New Jersey. (Am. Compl. ¶¶ 1, 42, ECF No. 13.) Defendant issued Plaintiff an insurance policy (the "Policy") with an initial policy period of January 20, 2020 to January 20, 2021. (*Id.* ¶ 6; Policy at 120, Def.'s Ex. A, ECF No.

16-3.)[1] The Policy covers, among other things, loss of "Business Income" and "Extra Expense" from "direct physical loss of or damage to property . . . caused by or result[ing] from a Covered Cause of Loss" (the "Business Income and Extra Expense Provisions"). (Policy at 17.) The Policy also covers certain losses of business income and extra expenses where "action of civil authority . . . prohibits access to the described premises" (the "Civil Authority Provision"). (*Id.* at 29.) Under the Civil Authority Provision, "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss." (*Id.*)

The Policy excludes from coverage "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*Id.* at 103.)[2]

B.  *COVID-19 Executive Orders*

In response to the COVID-19 pandemic, the Governor of New Jersey (the "Governor") issued several executive orders (the "Executive Orders"). On March 21, 2020, the Governor issued Executive Order 107, which, among other things, temporarily closed cosmetology shops, barber shops, beauty salons, hair braiding shops, nail salons, electrology facilities, spas, massage parlors, and tanning salons in New Jersey. (Am. Compl. ¶ 38.)[3]

---

[1] The Policy was terminated due to nonpayment effective August 20, 2020. (*See* Policy at 120, Def.'s Ex. A, ECF No. 16-3.)

[2] The Policy also excludes (i) loss or damage caused by "[t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property" (the "Ordinance or Law Exclusion") (*id.* at 36); (ii) loss or damage caused by "loss of use or loss of market" (the "Loss of Use Exclusion") (*id.* at 38); and (iii) loss or damage caused by "[a]cts or decisions . . . of any person, group, organization or governmental body" (the "Acts or Decisions Exclusion") (*id.* at 40).

[3] The Amended Complaint also cites Executive Order 103, which declared a Public Health

Plaintiff "closed for several months and [had] only recently reopened" as of the filing of the Amended Complaint. (*Id.* ¶ 43.) Unfortunately, Plaintiff "suffered a substantial loss of business and income." (*Id.*) Plaintiff also terminated staff members' employment. (*Id.*) Defendant has denied coverage for Plaintiff's losses. (*Id.* ¶ 54.)

## II.     Procedural History

Plaintiff filed the Complaint on September 18, 2020 in New Jersey Superior Court, Mercer County. (Notice of Removal ¶ 1, ECF No. 1.) Defendant removed the case to this Court on October 22, 2020. (ECF No. 1.) On December 2, 2020, Plaintiff filed the operative Amended Complaint. (ECF No. 13.) The Amended Complaint alleges two counts: (1) a declaratory judgment of Plaintiff's coverage under the Policy (Am. Compl. ¶¶ 46–51), and (2) breach of contract (*id.* ¶¶ 52–55). Plaintiff seeks coverage under the Policy's Business Income, Extra Expense, and Civil Authority provisions, in addition to the "'sue and labor' provisions in the Policy." (*Id.* ¶¶ 51(b)–(e).)

On December 16, 2020, Defendant filed a Motion to Dismiss. (ECF No. 16.) Plaintiff filed an Opposition (ECF No. 18), and Defendant filed a Reply (ECF No. 21). Defendant's Motion to Dismiss is presently before the Court.

## **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

---

Emergency and State of Emergency (Am. Compl. ¶ 36, ECF No. 13); Executive Order 104, which "limited the scope and hours of operation for non-essential, retail, recreational, and entertainment businesses" (*id.* ¶ 37); and Executive Orders 119 and 138, which extended the Public Health Emergency and State of Emergency (*id.* ¶¶ 39–40).

omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The court may also consider "documents . . . explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).

## DISCUSSION

**I.    Virus Exclusion**

The Virus Exclusion precludes coverage of Plaintiff's losses. Plaintiff asserts three

principal arguments to the contrary. First, Plaintiff appears to imply that the Virus Exclusion is ambiguous. (*See* Opp'n at 8, ECF No. 18.) In other insurance cases, however, this Court has determined that identical virus exclusions are unambiguous. *See Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021); *7th Inning Stretch LLC v. Arch Ins. Co.*, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021).

Second, Plaintiff contends that the Executive Orders, not the COVID-19 virus, caused its losses. (*See* Opp'n at 10.) In New Jersey, "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Causeway*, 2021 WL 486917, at *5 (quoting *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019)). "Where a peril specifically . . . sets other causes in motion which, in an unbroken sequence and connection between the act and the final loss, produces the result for which recovery is sought, the . . . peril is regarded as the proximate cause of the entire loss." *Id.* (quoting *N.J. Transit*, 221 A.3d at 1192). The Governor's Executive Order declaring a Public Health Emergency and State of Emergency was issued "[i]n response to . . . COVID-19." (Am. Compl. ¶ 36.) Therefore, Plaintiff's argument that the virus did not cause Plaintiff's losses is unavailing.[4]

Third, Plaintiff maintains that regulatory estoppel bars Defendant from invoking the Virus Exclusion. (*See* Opp'n at 11–16.) Plaintiff alleges that the insurance industry made misrepresentations to state regulators when securing approval of the Virus Exclusion. (*See* Am.

---

[4] The absence of an anti-concurrent causation clause in the Virus Exclusion does not alter this analysis. *See Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917, at *5 n.6, *7 (D.N.J. Feb. 10, 2021) (concluding that an identical virus exclusion without an anti-concurrent causation clause precluded coverage of losses from the COVID-19 pandemic). "Anti-concurrent clauses are exclusionary language designed to avoid the efficient proximate cause doctrine." *Id.* (internal quotation marks omitted).

Compl. ¶¶ 29–34.)[5] Plaintiff relies on a case in which the New Jersey Supreme Court applied the regulatory estoppel doctrine in the context of a pollution-exclusion clause. (*See* Opp'n at 11–12 (citing *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.*, 629 A.2d 831 (N.J. 1993)).) In *Morton*, the court estopped insurers from relying on an interpretation of the pollution-exclusion clause that was inconsistent with previous industry representations to state regulatory authorities. *See* 629 A.2d at 872–76. Unlike the insurers' misrepresentations in *Morton*, the insurers' representations cited by Plaintiff do not contradict Defendant's position in this case. Therefore, Plaintiff's regulatory estoppel argument fails. *See Del. Valley Plumbing Supply, Inc. v. Merchs. Mut. Ins. Co.*, 2021 WL 567994, at *6 (D.N.J. Feb. 16, 2021) (reasoning that the plaintiff "failed to point to a similar misrepresentation regarding the scope of the Virus Exclusion, and to demonstrate how the interpretation advanced by [the defendant] is inconsistent with prior

---

[5] Insurance Services Office, Inc., in a submission to state regulators, represented,

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to public policy.

(Am. Compl. ¶ 30.) The American Association of Insurance Services, in a separate submission, represented,

> Property Policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . . .
>
> [The Virus Exclusion] clarifies that loss, cost, or expenses by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress is excluded . . . .

(*Id.* ¶ 31.)

6

representations made by the insurance industry to regulators").[6] Because Plaintiff's losses were "caused by or result[ed] from [a] virus . . . that induces or is capable of inducing physical distress, illness or disease," the Virus Exclusion applies. (*See* Policy at 103.)[7]

Consequently, Plaintiff's losses are not covered under the Policy's Business Income, Extra Expense, or Civil Authority provisions. Under the Business Income and Extra Expense Provisions, any loss or damage must be "caused by or result from a Covered Cause of Loss." (*Id.* at 17.) Likewise, under the Civil Authority Provision, "[t]he civil authority action must be due to direct physical loss of or damage . . . caused by or resulting from a Covered Cause of Loss." (*Id.* at 29.) The Virus Exclusion

> applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense, rental value or action of civil authority.

(*Id.* at 103.) Therefore, the Business Income, Extra Expense, and Civil Authority provisions do not provide the coverage that Plaintiff seeks.

## II.     "Sue and Labor" Provisions

Plaintiff further asserts that its losses are covered under what it characterizes as the "Sue and Labor" provisions of the Policy, which provide,

> You must see the following are done in the event of loss or damage to Covered Property: . . . Take all reasonable steps to protect the Covered Property from

---

[6] The Amended Complaint claims that the Virus Exclusion is "void as against public policy" (Am. Compl. ¶ 51(h)), but "public policy considerations alone are not sufficient to permit a finding of coverage in an insurance contract when its plain language cannot fairly be read otherwise to provide that coverage." *State v. Signo Trading Int'l, Inc.*, 612 A.2d 932, 940 (N.J. 1992).

[7] Because the Virus Exclusion precludes coverage of Plaintiff's losses, the Court need not address the potential applicability of the Ordinance or Law Exclusion, the Loss of Use Exclusion, or the Acts or Decisions Exclusion.

> further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. . . . However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(*Id.* at 41–42; *see also* Opp'n at 32.) "[T]he insurer's obligation to reimburse for acts taken to preserve or protect Covered Property does not extend to require reimbursement for prevention of damage to property that is excluded from coverage or for a circumstance that is not a covered cause of loss." *See Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 293 (3d Cir. 2004). Plaintiff has not established a covered cause of loss. Therefore, the "Sue and Labor" provisions do not provide an independent basis for recovery. *See id.*

**III.   Leave to Amend**

Plaintiff requests leave to amend the Amended Complaint to the extent that it fails to state a claim. (Opp'n at 29.) Any amendment, however, would be futile. Therefore, the Court denies Plaintiff's request. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing futility of amendment as a basis for not granting leave to amend).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 16) is granted. An appropriate Order will follow.

Date: <u>March 26, 2021</u>                                                  <u>/s/ Anne E. Thompson       </u>
                                                                                          ANNE E. THOMPSON, U.S.D.J.